# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RANDALL LYONS, *et al.*, : | |
| : | Case No. 2:16-cv-813 |
| Plaintiffs, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Vascura |
| KIM JACOBS, *et al.*, : | |
| : | |
| Defendants. : | |

## OPINION & ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for failure to state a claim. (Doc. 10.) For the reasons detailed below, Defendants' Motion is **DENIED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Randall Lyons, Anthony Johnson, and Douglas Jones are all currently employed as officers with the Columbus Division of Police (the "Division"). (Am. Compl., Doc. 9, ¶ 8.) All three Plaintiffs have been subject to administrative investigations for alleged misconduct. (*See id.* ¶¶ 16–19.) During the course of those administrative investigations, Plaintiffs were placed on restricted duty and required to report to "580" (the site at police headquarters where officers under internal investigation are stationed). (*See id.* ¶¶ 9, 21.)

According to Plaintiffs, "[n]o reasonable officer would want to be assigned to 580." (*Id.* ¶ 13.) Not only are officers assigned to "580" required to report "to a large room surrounded by glass walls and hallways subject to heavy foot traffic" so that they will feel "humiliated by the experience," but officers on restricted duty are also "functionally demoted" in that they are

1

"prevented from doing their normal jobs, deprived of their badges and guns, and denied significant opportunities for overtime and special duty pay." (*See id.* ¶¶ 12–13.)

While Plaintiffs acknowledge that there is nothing "unconstitutional in and of itself about temporarily assigning officers to restricted duty during the course of an internal investigation related to the officers" (*id.* ¶ 10), they allege that the Division has adopted an "unconstitutional policy" of punishing officers through the use of assignment to "580." (*Id.* ¶ 9.) Rather than using assignment to "580" as a "reasonable, short-term assignment while the Division undertakes an internal investigation," it allegedly uses assignment to "580" as a punishment, subjecting officers to restricted duty "for needless and unjustifiable durations" while denying those officers any "due process prior to imposing such punishment." (*Id.* ¶¶ 11, 14.) Specifically, Plaintiffs and other Columbus police officers purportedly are not "given sufficient explanation of the charges against them, the evidence in support, or an opportunity to be heard prior to assignment to 580." (*Id.* ¶ 15.) Essentially, Plaintiffs argue that the Division and the City of Columbus (the "City") are using assignment to "580" as an end-run around due process, because the City knows that, "before inflicting any punishment beyond the de minimis on its officers, it must provide them with due process." (*Id.* ¶ 14.)

With regard to Plaintiffs: (1) in total, the administrative investigation of Lyons lasted for over two years; (2) the administrative investigation of Johnson lasted for two and a half years; and (3) the investigation of Jones lasted nearly two years. (*See id.* ¶ 24.) Ultimately, each Plaintiff received a less than 250-hour suspension. (*See id.*) During these lengthy administrative investigations, Plaintiffs were placed on restricted duty and assigned to "580," but claim that they did not know or have reason to know that it was designed to be punishment, or that it would last for such a long period of time. (*See id.* ¶¶ 25–26.) While on restricted duty, Plaintiffs were

not permitted to perform their standard job duties; instead, they worked desk jobs but had very little meaningful work to do. (*See id.* ¶¶ 27–28.) Additionally, Plaintiffs were ineligible for overtime and prevented from working special duty, which significantly impacted their financial well-being—as a "substantial portion" of Plaintiffs' annual income came from overtime and special duty pay.[1] (*See id.* ¶¶ 29–35.)

Plaintiffs are members of the union that has entered into a collective bargaining agreement ("CBA") with the City. (*Id.* ¶ 37.) Under the CBA, "good cause" is required to punish a union employee. (*See id.*) Plaintiffs claim, however, that assignment to "580" is "not considered punishment under the agreement," and thus "it cannot be grieved through the [CBA] grievance process." (*Id.*) According to Plaintiffs, as members of the union that has entered into the CBA with the City, which requires good cause prior to punishment, they have a "constitutionally protected property interest in their continued employment, compensation, and job benefits." (*Id.*)

Plaintiffs filed suit against the City, the Division, and various individual supervising officers[2] in August 2016. (Compl., Doc. 1.) Defendants originally moved to dismiss Plaintiffs' claims in November 2016 (Doc. 3), and Plaintiffs amended their Complaint. (Doc. 9.) In their Amended Complaint, Plaintiffs bring procedural due process and First Amendment retaliation

---

[1] It is the "custom and practice" of the Division to allow officers to "work significant overtime hours and special duty hours." (Doc. 9 ¶ 35.) Overtime duty involves officers "performing their normal job duties as police officers for anything over forty hours per week." (*Id.* ¶ 32.) Special duty assignments are those "outside the work normally performed by police officers, and are assigned when a particular need in the community arises." (*Id.* ¶ 33.) The only circumstances under which officers are denied overtime or special duty work are when they are formally punished or placed on restricted duty during an internal administrative investigation. (*See id.* ¶ 36.)

[2] The individual defendants named in the Amended Complaint are: Chief Kim Jacobs, Deputy Chief Ron Gray, Deputy Chief Ken Kuebler, Deputy Chief Michael Woods, Commander Mark Lang, Commander Gary Cameron, Commander Jennifer Knight, Commander Robert Meader, Commander Michael Springer, Commander Mark Gardner, Lieutenant Wade Spears, Lieutenant Joseph Echenrode, Sergeant Eric Babcock, Sergeant Dan Weaver, Sergeant Richard Brooks, Sergeant Jeff Knight, Sergeant Ken Decker, and Officers John and Jane Doe.

claims under 42 U.S.C. § 1983 against Defendants. (*See id.* at 10–14.) Defendants again move to dismiss Plaintiffs' claims in their entirety. (Doc. 10.) Defendants' motion is now ripe for adjudication.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Ben. Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (internal quotation marks and citation omitted). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In ruling on a motion to dismiss, a court may consider matters outside the pleadings without converting the motion into one for summary judgment if those matters "simply fill[] in

4

the contours and details of the plaintiff's complaint, and add[] nothing new." *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

## III.  LAW AND ANALYSIS

Defendants argue that Plaintiffs' claims should be dismissed because: (1) they are barred by the applicable statute of limitations; (2) the Court lacks jurisdiction to hear them because Plaintiffs' exclusive remedy is the grievance process delineated in the CBA; (3) the individual Defendants are entitled to qualified immunity; and (4) Plaintiffs did not properly plead claims against the City.  The Court will address each argument in turn.

### A. Plaintiffs' Claims Are Not Time-Barred.

The parties agree that the applicable statute of limitations for a § 1983 claim in Ohio is two years, and begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Del Rosario v. Tabor*, No. 2:09-cv-457, 2010 WL 1416721, at *2 (S.D. Ohio Apr. 8, 2010) (internal citation omitted).  In determining when the cause of action accrues in § 1983 actions, courts look to "what event should have alerted the average lay person to protect his rights." *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989) (citation omitted).

Plaintiffs allege that they were placed on restricted duty as punishment, in retaliation for engaging in First Amendment-protected speech, and without pre-deprivation due process.  (*See* Doc. 9 at 11–12; Doc. 10 at 5.)  All three Plaintiffs were first placed on restricted duty and assigned to "580" in 2013.  (*See* Doc. 9 ¶ 24.)  Because Plaintiffs did not file this lawsuit until 2016, Defendants argue, their claims are time-barred.  (Doc. 10 at 6.)  Plaintiffs contend, however, that: (1) their claims are saved by the continuing violation doctrine; (2) their claims did not necessarily ripen at the moment they were assigned to restricted duty; and (3) they did not

5

know (nor should they have known) that their constitutional rights had been violated when they were first assigned to restricted duty. (*See* Doc. 11 at 3.)

### 1. The Continuing Violation Doctrine

It is well settled that the continuing violation doctrine operates to preserve claims that would otherwise be time-barred in certain cases involving ongoing discrimination or ongoing violations of civil rights. *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991). The continuing violation doctrine applies where: (1) the defendant's wrongful conduct continues after the precipitating event that began the pattern; (2) injury to the plaintiff continues to accrue after that event; and (3) further injury to the plaintiff was avoidable if the defendant had at any time ceased its wrongful conduct. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999).

According to Plaintiffs, "[a]ll three components of the continuing violations doctrine exist here." (Doc. 11 at 4.) First, by *keeping* Plaintiffs on restricted duty throughout the pendency of an unlawfully prolonged administrative investigation, Defendants continued their wrongful conduct after the precipitating event of *placing* them there. Second, because Plaintiffs were denied additional job opportunities, experience, overtime, and special duty work while they were on restricted duty, the injury they suffered continued to accrue. Finally, if Defendants had "stopped punishing Plaintiffs by needlessly prolonging their administrative investigations and assignments to restricted duty, Plaintiffs would have avoided further injury, including lost pay and job opportunities." (*Id.*)

Plaintiffs liken their case to *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997). In *Kuhnle*, the plaintiff claimed that a local resolution banning through traffic denied him of his liberty interests created by a fundamental constitutional right to intrastate travel.

6

*Kuhnle*, 103 F.3d at 521. The Sixth Circuit held that plaintiff's due process claim for deprivation of liberty was not time-barred, because under the continuing violation doctrine, "the resolution . . . barred Kuhnle from using the roads in question on an ongoing basis," and therefore "actively deprived Kuhnle of its asserted constitutional rights every day that it remained in effect." *Id.* at 522. Each day that the law remained in effect, it inflicted "continuing and accumulating harm" on Kuhnle. *Id.*

According to Defendants, the continuing violation doctrine is inapplicable. "A continuing violation in a § 1983 action occurs when there are continued unlawful acts, not by continued ill effects from the original violation." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010) (citation omitted). Defendants argue that because Plaintiffs' claims amount to "nothing more than an objection to the continuing ill effects of being placed on restricted duty," they do not support a claim for a continuing violation. (*See* Doc. 14 at 3.) Further, Defendants claim that *Kuhnle* is inapposite because, unlike the plaintiff in that case, Plaintiffs' claims do not implicate due process rights. (*See id.* at 4.)

The Court agrees with Defendants—*Kovacic* rules here. Plaintiffs' inability to take advantage of overtime and special duty opportunities was a continuing ill effect of their initial assignment to "580," not a continuing violation. The continuing violation doctrine does not apply to Plaintiffs' claims.[3]

## 2. Delay

"A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Guba v.*

---

[3] While agreeing with Defendants' position on the continuing violation doctrine, Court does not accept Defendants' position that Plaintiffs' claims fail to implicate due process rights. The Sixth Circuit has noted that the loss of pay and benefits, and unwanted job transfers constitute deprivations of protected property interests. *See Gunasekera v. Irwin*, 551 F.3d 461, 468 (6th Cir. 2009); *see also Ridpath v. Bd. of Governors, Marshall Univ.*, 447 F.3d 292, 310 (4th Cir. 2006).

7

*Huron Cty.*, 600 F. App'x 374, 382 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Part and parcel of the right to be heard at a "meaningful time" is the notion that process should not be unduly delayed. "[A]t some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature." *Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991).

Thus, while Plaintiffs acknowledge that "an initial assignment to restricted duty during the pendency of an administrative investigation may not be a deprivation of their property interests in continued employment sufficient to trigger due process protection," they argue that when the "administrative investigation and concomitant restricted duty assignment are needlessly dragged out for unreasonable lengths, the assignment becomes a meaningful property deprivation, such that it violates the due process clause to have imposed it without first providing appropriate process." (*See* Doc. 11 at 6.) Defendants claim that Plaintiffs have not alleged facts from which one could infer that the administrative investigations were unreasonably lengthy, or that they were placed or remained on restricted duty as punishment. (Doc. 14 at 5.) To the contrary, Plaintiffs alleged that the outcomes of the administrative investigations into their purported conduct resulted in suspensions of less than 250 hours, but the investigations themselves lasted close to two years—which seems to the Court to be disproportionate. (*See* Doc. 9 ¶ 24.) Construing these facts in a light most favorable to the non-moving Plaintiffs, as is required on a motion to dismiss, one could infer that the administrative investigations were unduly lengthy, and Plaintiffs were on restricted duty for the duration of these investigations without receiving due process.

Because the delay "ripen[ed] into deprivation" at some point *after* Plaintiffs were initially placed on restricted duty, Defendants' argument that Plaintiffs' claims are time-barred because

they were filed more than two years after their original assignment to restricted duty is without merit. *Schroeder*, 927 F.2d at 960.

Similarly, in determining when the cause of action accrues in § 1983 actions, courts look to "what event should have alerted the average lay person to protect his rights." *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989) (citation omitted). Here, the Court agrees with Plaintiffs that, at a minimum, the allegations of the Amended Complaint make clear the possibility that Plaintiffs neither knew nor had reason to know that their rights had been violated at the time that they were placed on restricted duty, and that discovery is necessary to determine when Plaintiffs' cause of action accrued. (*See* Doc. 11 at 7.)

For all of these reasons, Plaintiffs' claims are not barred by the statute of limitations.

### B. The CBA Does Not Provide Plaintiffs' Exclusive Remedy.

Defendants also assert that this Court lacks jurisdiction to consider Plaintiffs' claims, because the CBA "governs the terms and conditions of Plaintiffs' employment and provides for final and binding arbitration of grievances before a neutral arbitrator." (Doc. 10 at 6–7; Ex. A to Defs.' Mot. to Dismiss, Doc. 10-1, at 12.5(E)(3) ("The decision of the arbitrator shall be final and binding on all parties.").) In support, Defendants rely on Ohio Revised Code Section 4117.10(A), which states that a CBA between a public employer and bargaining unit "governs the wages, hours, and terms and conditions of employment covered by the agreement," and if the CBA "provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure." Ohio Rev. Code § 4117.10(A). Defendants argue that Plaintiffs' complaints about being assigned to "580" are "grievance[s]"[4] that are subject to the CBA's grievance and arbitration procedure. (*See* Doc.

---

[4] A "grievance" is defined in the CBA as "any unresolved question or dispute regarding the City's interpretation and application of the terms of [the CBA]." (Doc. 10-1 at 12.1.)

10 at 7–8.) In other words, Defendants assert that Plaintiffs' "claim that at some unspecified time their assignments to restricted duty went from reasonable to unreasonable is nothing more than a contract dispute disguised as a procedural due process claim." (*Id.* at 8.)

But Plaintiffs' claims are brought under federal law. And Ohio law "expressly recognizes" that laws "pertaining to civil rights will prevail over conflicting provisions of agreements between employee organizations and public employers when the agreement does not make a specification about a matter." *Short v. Mary*, No. 1:13-CV-704, 2014 WL 4377828, at *5 (S.D. Ohio Sept. 4, 2014) (citing Ohio Rev. Code § 4117.10). With regard to arbitration agreements specifically, in *Wright v. Universal Maritime Service Corp.*, the Supreme Court held that a CBA's general arbitration clause did not require a plaintiff to utilize the CBA's arbitration procedure for an alleged violation of the Americans with Disabilities Act, because the arbitration clause did not contain a "clear and unmistakable" waiver of the plaintiff's statutory right to a judicial forum for employment discrimination claims. 525 U.S. 70, 82 (1998). According to the Sixth Circuit, to "even approach" *Wright*'s requirement that a waiver of a plaintiff's federal forum rights be "clear and unmistakable," the statute pursuant to which a plaintiff brings a claim "must specifically be mentioned in a CBA." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999). As Plaintiffs properly point out, not only does the CBA fail to specifically reference 42 U.S.C. § 1983, as required under *Bratten*, it also "does not even purport to be the exclusive remedy for an aggrieved" union member. (Doc. 11 at 8.) In fact, the CBA explicitly states that "[n]othing in this Grievance Procedure shall deny members any rights available at law to achieve redress of their legal rights, including the right to appeal to another forum." (Doc. 10-1, at 12.3.)

*Short v. Mary* is instructive here. In *Short*, the defendants argued that the district court lacked jurisdiction over plaintiff's claims, as they were "nothing more than a claim for breach of

the CBA disguised as a claim brought under 42 U.S.C. § 1983 and the Equal Protection Clause." *Short*, 2014 WL 4377828, at *4. This Court held that, although the plaintiff's claim was "factually grounded in the CBA," it was based on rights derived from the Equal Protection Clause, which are "distinct from the contractual rights to which [plaintiff] was entitled under the CBA." *Id.* Despite the "close connection" between the grievance asserted by the plaintiff and the constitutional claim, the Court, taking the facts in a light most favorable to the plaintiff, held that the plaintiff's claim was a "constitutional one under section 1983 that may be raised in federal court." *Id.* In addition, the Court found the defendants' argument that the CBA was the exclusive remedy for plaintiff's grievances unavailing, because the CBA made no reference to § 1983. *See id.* at *5.

Defendants argue that *Short* is distinguishable because in that case, the plaintiff "utilized the grievance and arbitration procedures provided in [the CBA] to resolve [his] contractual claims," and also asserted rights that were distinct from his rights under the CBA. (*See* Doc. 14 at 9–10.) Here, Plaintiffs do not purport to be asserting contract-based claims; they are bringing only constitutional claims. Like the *Short* plaintiff, they are asserting rights that are distinct from their contractual rights under the CBA. Further, the CBA wholly fails to reference § 1983 *and* explicitly states that it is not an aggrieved union member's sole remedy. Accordingly, the CBA does not provide Plaintiffs' exclusive remedy, and this Court has jurisdiction to consider Plaintiffs' claims.

### C. Defendants' Qualified Immunity Defense Is Premature.

Even if Plaintiffs' claims are timely and the Court has jurisdiction, Defendants argue, "Plaintiffs cannot overcome Defendants['] entitlement to qualified immunity." (Doc. 10 at 8.) The doctrine of qualified immunity provides that "government officials performing discretionary

functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

While a court may consider the issue of qualified immunity on a Rule 12(b)(6) motion, *see Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001), "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). An officer's "entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point" of a lawsuit, but "that point is usually summary judgment and not dismissal under Rule 12." *Id.* (internal citation omitted).

Defendants argue that Plaintiffs have failed to state a plausible constitutional violation against the individual Defendants in their Amended Complaint because they merely "includ[e] the names of all the Defendants and lump[] them together in conclusory fashion." (Doc. 10 at 9.) Plaintiffs correctly note that, in a recent excessive force case, the Eastern District of Kentucky held that all that is required at the pleading stage is for plaintiffs to name the officers at the scene, describe the type of force used, and allege that the officers collectively used that force. *See Horn v. City of Covington*, No. 14-73, 2015 WL 4042154, at *6 (E.D. Ky. July 1, 2015). Plaintiffs have done just that in their Amended Complaint—naming the individual officers responsible for each Plaintiff's assignment to "580," referencing the officers' supervisory position over the Plaintiffs, and alleging that each of these officers played a role in using assignment to "580" as a punishment, rather than as a legitimate temporary assignment associated with a legitimate administrative investigation. (*See* Doc. 9 ¶¶ 43–45.) At this juncture, Plaintiffs "need not make detailed factual allegations about which officer committed which act . . . . That burden is

reserved for later stages of the litigation." *Horn*, 2015 WL 4042154, at *6 (internal citation omitted).

Accordingly, Defendants' qualified immunity defense is premature at the motion-to-dismiss stage.

### D. Plaintiffs' *Monell* Claim Against the City May Proceed.

Defendants argue that Plaintiffs' claims against the City must be dismissed because: (1) none of the individual Defendants has violated Plaintiffs' constitutional rights; and (2) Plaintiffs have failed to plead adequate facts to support a claim for relief under a failure to train theory. (Doc. 10 at 9–10.) Both arguments are unavailing.

First, the Court declines to dismiss the claims against the individual Defendants at this time. Additionally, as a matter of law, a municipality can be sued directly under § 1983 and held liable even when individual defendants have not committed a constitutional violation. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). While a municipality cannot be held liable solely on a *respondeat superior* theory, it can be held directly liable where constitutional deprivations are "visited pursuant to governmental custom" or policy. *Id.* at 690–91. Here, Plaintiffs allege in their Amended Complaint that the violations of their constitutional and civil rights were a direct result of the City's "custom, practice and/or policy." (Doc. 9 ¶ 52.) Accordingly, Plaintiffs' claim under *Monell* against the City may proceed.

With regard to the supposed failure-to-train claim, it is unclear to the Court whether Plaintiffs intend to bring such a claim. As Defendants correctly note, Plaintiffs broadly allege that the individual Defendants were "inadequately trained" and "have been led by the City to believe that they can, with impunity, subject individual officers" to discipline without due process (Doc. 9 ¶ 53), but make no specific allegations about the City's training regime or

13

policies. *See Scrap Yard, LLC v. City of Cleveland*, 513 F. App'x 500, 505 (6th Cir. 2013) (dismissing failure-to-train claim where plaintiffs failed to specify how training was lacking); *Pariscoff v. Columbus City Police Dep't*, No. 2:14-cv-855, 2015 WL 1476651, at *3 (S.D. Ohio Mar. 31, 2015) (same). Moreover, Plaintiffs fail to address Defendants' arguments about their failure-to-train claim in their opposition to Defendants' motion to dismiss.

At this stage, the Court is led to believe that there is no failure-to-train claim. However, if Plaintiffs intended to raise such a claim, because it was pleaded inadequately in the Amended Complaint and because Plaintiffs failed to address Defendants' arguments about a failure-to-train claim in opposing the motion to dismiss, Defendants' motion is **GRANTED** as to this claim.

## IV.  CONCLUSION

For all of these reasons, Defendants' Motion is **DENIED**.

**IT IS SO ORDERED.**

                                                   s/Algenon L. Marbley
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED:  September 20, 2017**